**IT IS ORDERED as set forth below:**



**Date: November 18, 2016**



_____

**Wendy L. Hagenau**
**U.S. Bankruptcy Court Judge**

_____

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CASE NO. 10-89669-WLH |
| | ) | |
| VICTORIA ADAMS, | ) | CHAPTER 7 |
| | ) | |
| Debtor. | ) | JUDGE WENDY L. HAGENAU |
| | ) | |
| | ) | |
| VICTORIA ADAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ADV. PROC. NO. 15-5413 |
| | ) | |
| EDUCATIONAL CREDIT MANAGEMENT | ) | |
| CORPORATION, U.S. DEPARTMENT OF | ) | |
| EDUCATION, PENNSYLVANIA HIGHER | ) | |
| EDUCATION ASSISTANCE AGENCY | ) | |
| a/k/a American Education Services, GREAT | ) | |
| LAKES EDUCATIONAL SERVICES, INC. | ) | |
| a/k/a Student Loan Consol CN, and GOAL | ) | |
| FINANCIAL LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**SUPPLEMENTAL ORDER AFTER TRIAL**

1

On October 21, 2016, the Court held a trial in this matter as to Educational Credit
Management Corporation ("ECMC") at the conclusion of which it announced its oral ruling that
the Debtor's student loans were dischargeable under 11 U.S.C. § 523(a)(8).  On October 26,
2016, the Court entered an Order and Judgment after Trial confirming the oral ruling and
reserving the right to supplement the Order [Docket No. 30].[1]  The Court now supplements its
oral ruling as follows.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This
matter is a core proceeding under 28 U.S.C. § 157(b)(2)(I) as a determination of the
dischargeability of certain student loans.

## PROCEDURAL BACKGROUND

The Debtor filed her bankruptcy case under Chapter 7 of the United States Bankruptcy
Code on October 4, 2010.  The Debtor received a discharge on January 31, 2011.  On September
3, 2015, the Debtor filed a motion to reopen her Chapter 7 case in order to determine the
dischargeability of her student loans.  The case was reopened on September 23, 2015.  The
Debtor then commenced this adversary proceeding on October 20, 2015 against the U.S.
Department of Education, Goal Financial LLC, Pennsylvania Higher Education Assistance
Agency a/k/a American Education Services, and Great Lakes Educational Services Inc. a/k/a
Student Loan Consolidation CN.  On November 3, 2015, ECMC filed a motion to intervene
alleging the loans were being transferred to it from Great Lakes Higher Education Corporation
and that Pennsylvania Higher Education Assistance Agency a/k/a American Education Services
was a prior servicer.  ECMC's motion to intervene was granted on December 8, 2015.  On
November 24, 2015, the United States of America filed a motion to dismiss as to it, which was

---

[1] The Order mistakenly did not make clear the judgment was only as to ECMC.

granted on December 9, 2015.  The Debtor did not proceed to trial against Goal Financial LLC,

Great Lakes Educational Services or Pennsylvania Higher Education Assistance Agency so the

Court hereby dismisses them as Defendants.

## FINDINGS OF FACT

The Debtor is single, has no dependents and at the time of trial was 52 years old.  She is

bright and articulate and has handled this case *pro se*.  The Debtor first took out student loans in

1982 while attending Temple University.  She took out six loans totaling $10,700 between 1982

and 1988 for her education at Temple.   She received a bachelor's degree in business

administration, specializing in human resources.

The Debtor then moved to Georgia in the 1990s and began attending Georgia State

University to obtain a degree in graphic arts.  During the period 1997 through 2000, the Debtor

obtained nine loans totaling $36,531.  The Debtor attended Georgia State both part-time and full-

time but did not receive a degree.  In November and December 2002, all open balances on the

prior student loans were consolidated into three Federal Family Education Loans totaling

$54,675.  After the consolidation, the Debtor and the servicer of the consolidated loans agreed to

a number of deferments and forbearances of payment based at times on her unemployment status

and at times on her status as a full-time student.

Prior to the consolidation of the loans in 2002, the Debtor made at least 73 payments on

her student loans in accordance with the terms thereof.  After consolidation of the student loans

in 2002, the Debtor made seven payments, some in 2004 and some in 2009.  The total of all

payments made by the Debtor on her student loans is $11,746.08.  In June 2011, the Debtor

signed an agreement to repay ECMC pursuant to an income-based repayment plan.  Under the

terms of an income-based repayment plan, the Debtor must only make payments to the holder of

3

the loan if her income exceeds certain levels and the amount of the payment is based on the

Debtor's income.  At all times under the income-based repayment plan, the Debtor was required

to make no payments because of her lack of income.  As of July 30, 2016, the amount due

ECMC on the consolidated loans was $79,328.

After her graduation from Temple, the Debtor had various full and part-time jobs until

2010 when she was injured.  Prior to 2010, she did have periods of unemployment and received

an unemployment deferment from the holder of the student loans in 2002, 2003, 2007, 2008 and

2011.  At the time of her injury, which will be discussed in more detail below, she was a case

manager at the Department of Family and Children's Services in Cobb County.  Other past jobs

held by the Debtor included a residential counselor, payroll/benefits administrator, and career

center manager.  The highest income the Debtor made from 1980 through 2009 was $33,472 in

1992 according to the Social Security Administration.  The Debtor's wages only exceeded

$30,000 in that 30-year time period only two other times.  During the same 30-year time period,

the Debtor's income only exceeded $25,000 four times.  The Debtor's adjusted gross income in

2010 was $13,876; in 2011 it was $8,950.  From 2012 through 2015, the Debtor's adjusted gross

income was $-0- (or actually a negative number).

In mid-2010, the Debtor suffered an injury to her hand while at work and was then unable

to work.  She was granted leave by her employer for the period July 9-30, 2010.  When she did

not return to work on August 9, 2010, her employment was terminated.  After pursuing various

administrative steps *pro se*, the Debtor obtained a worker's compensation award whereby she

receives $286.08 a week.  The worker's compensation award is anticipated to end in mid- to late-

2017.

During this time of unemployment, the Debtor was using credit cards for living expenses, leading to financial difficulties.  On October 4, 2010, the Debtor filed her bankruptcy petition under Chapter 7 of the United States Bankruptcy Code.  She scheduled secured debts of $132,550 related to her home and unsecured debt other than student loans of $72,511.  Most of the unsecured debt consisted of medical bills and credit card bills.  On January 31, 2011, the Debtor received a discharge.  The Debtor did not seek a discharge of her student loans at that time and instead signed an income-based repayment plan in June 2011 as discussed above.  Shortly after receiving her discharge, her house was foreclosed and the Debtor moved into an apartment.

After her bankruptcy filing, the Debtor's medical issues continued.  She was also involved in a car accident, creating other health issues.  The Debtor applied for Social Security disability *pro se* but her application was denied in August 2015.  The Debtor continues to appeal *pro se* through various administrative procedures the denial of her request for Social Security disability payments.  ECMC suggested to the Debtor she apply for a discharge of her student loans due to her disability.  This process required that a doctor certify "an inability to engage in substantial gainful activity" that has lasted for 60 months or can be expected to last for a continuous period of not less than 60 months.  The Debtor has not obtained such a certification.  At least one doctor has encouraged the Debtor to get a job and this doctor and some of her therapists have opined that she could obtain a job that involved light sedentary work.

Her current income, consisting exclusively of worker's compensation payments and food stamps, is $1,259 a month.  Her expenses are approximately $1,800 a month (or $21,600 a year).  These expenses do not include any payments for health insurance, and she is not covered by health insurance.  The shortfall in income is being funded by the Debtor through use of credit

5

cards and through some funds she received in settlement of her claim resulting from the car

accident.  She testified that her current credit card balance is approximately $13,000.

## CONCLUSIONS OF LAW

Section 523(a)(8) excepts from discharge certain educational loans "unless

excepting such debt from discharge…would impose an undue hardship on the debtor and the

debtor's dependents".  11 U.S.C. § 523(a)(8); see also Wieckiewicz v. Educ. Credit Mgmt.

Corp., 443 Fed. Appx. 449, 451 (11th Cir. 2011).  The parties have not contested that the loans

here are the type that would be non-dischargeable.  To determine whether the exception of a

student loan from discharge will impose an "undue hardship" on a debtor, the Eleventh Circuit

has adopted the three-part test that was first articulated in Brunner v. New York State Higher

Education Services Corp., 831 F.2d 395 (2d Cir. 1987).  See Hemar Ins. Corp. of America v.

Cox (In re Cox), 338 F.3d 1238, 1240 (11th Cir. 2003) (adopting the Brunner test for undue

hardship).  To establish hardship under the Brunner test, the debtor must show:

> (1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loan.

Id. at 1241.  The debtor bears the burden of establishing each element of the Brunner test by a

preponderance of the evidence.  In re Brightful, 267 F.3d 324, 327 (3d Cir. 2001).  A debtor must

satisfy all three elements of the Brunner test in order to have her loans discharged.  In re

Roberson, 999 F.2d 1132, 1135-36 (7th Cir. 1993).

### A. Minimal Standard of Living

Under the first prong of Brunner, the court must examine "the debtor's current financial

condition to see if payment of the loans would cause his standard of living to fall below that

6

minimally necessary." Roberson, 999 F.2d at 1135.  Satisfying this prong "requires more than a showing of tight finances." In re Faish, 72 F.3d 298, 306 (3d Cir. 1995).  Determining whether repayment of a student loan will deprive the debtor of a minimal standard of living requires consideration of the debtor's household income and those expenses necessary to meet his or her basic needs. Miller v. Sallie Mae, Inc. (In re Miller), 409 B.R. 299, 312 (Bankr. E.D. Pa. 2009); Grove v. Educ. Credit Mgmt. Corp. (In re Grove), 323 B.R. 216, 224 (Bankr. N.D. Ohio 2005); Murphy v. U.S. Dept. of Educ. (In re Murphy), 305 B.R. 780, 793 (Bankr. E.D. Va. 2004).

The Debtor's budget here is modest, and ECMC does not seriously contest that the Debtor cannot afford to make any payment on her student loans at this time.  In fact, under ECMC's own income-based repayment program, the Debtor has not been required to make a payment on her student loans.  Her only income is worker's compensation and food stamps.  Her expenditures are bare bones and do not include health insurance.  Moreover, the Debtor testified that her shortfall in income is being covered in part by the use of credit cards, which have a balance of $13,000.  The Court therefore concludes the Debtor's current financial condition is such that payment of the loans would cause her standard of living to fall below that minimally necessary.

## B.  Good Faith Efforts to Repay the Loan

The next prong of the Brunner test requires the court to examine the debtor's good faith efforts to repay student loans.  A good faith analysis "requires the court to consider the debtor's efforts to obtain employment, maximize income, and minimize expenses." Kidd v. St. Loan Xpress, Inc. (In re Kidd), 472 B.R. 857, 862 (Bankr. N.D. Ga. 2012) (citing Educ. Credit Mgmt. Corp. v. Frushour (In re Frushour), 433 F.3d 393, 402 (4th Cir. 2005)).  This inquiry "is to be guided by the understanding that undue hardship encompasses a notion that the debtor may not

7

willfully or negligently cause his own default, but rather his condition must result from factors beyond his reasonable control." Faish, 72 F.3d at 305.

The Court concludes the Debtor has made a good-faith effort to repay the loans. To determine good faith, it is appropriate to examine the full history of the loans, not just the history since consolidation of them. The Debtor has made at least 80 payments of over $11,000 on the loans. She has complied with all the processes which the student loan holder has required, such as applying for deferments when unemployed or in school or for forbearances. She did not seek to discharge the loans shortly after they were made. She has carried these loans for 16 to 30 years.[2] It is also noteworthy that the Debtor did not attempt to determine these loans to be non-dischargeable at the time she filed her bankruptcy case. This is further evidence of the Debtor's good faith because it reflects her attempt to see if her medical situation would improve and she would be able to make further payments on her loans. In furtherance of that plan, the Debtor executed an income-based repayment plan with ECMC in June 2011, but even that plan never required her to make payments. Courts have held that participation in an income-based repayment plan is indicative of good faith. See Johnson v. Educ. Credit Mgmt. Corp. (In re Johnson), 299 B.R. 676, 682 (Bankr. M.D. Ga. 2003). Finally, the Court notes the Debtor's good faith is evidenced by her minimal living expenses. She is not spending excessively or living lavishly to avoid payment of student loans. The Court therefore concludes the Debtor has made good-faith efforts to repay the loan.

---

[2] The Court notes the student loans from the Debtor's enrollment at Temple are now 25 to 30 years old, and her student loans from her attendance at Georgia State are 16 to 20 years old.

## C.  *Persistent State of Affairs*

The final prong of the Brunner test requires the debtor to prove there are additional circumstances that indicate this "state of affairs is likely to persist for a significant portion of the repayment period of the student loans."   Brunner, 831 F.2d at 396.   Courts have stated that a student loan may not be discharged based simply on a "present inability to fulfill [the] financial commitment."   In re Brightful, 267 F.3d 324, 328 (3d Cir. 2001); see also Macon v. U.S. Dept. of Educ. (In re Macon), 2014 WL 5080410, at *3 (Bankr. N.D. Ga. Oct. 6, 2014).   Rather, there must be a "'certainty of hopelessness' that the debtor will be able to repay the loans within the repayment period."   Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley), 494 F.3d 1320, 1326 (11th Cir. 2007) (citing In re Brightful, 267 F3d at 328).   Many courts look to a list of additional circumstances that includes: whether the debtor suffers from a disability; her obligations to care for dependents; the quality and degree of education; nature of job skills; underemployment; number of years remaining in work life to repay the loan; age and ability to relocate; lack of assets which could be used to pay the loan; probability of increasing expenses; and whether better financial options exist elsewhere.   See Nys v. Educ. Cred. Mgmt. Corp. (In re Nys), 308 B.R. 436, 446 (9th Cir. BAP 2004), aff'd 446 F.3d 938 (9th Cir. 2006).

ECMC disputes that the Debtor has shown a certainty of hopelessness.  ECMC argues the Debtor is not fully disabled and could obtain a job and therefore her state of affairs is not persistent or hopeless.  ECMC equates total disability with a certainty of hopelessness.  Since she can get a job, ECMC argues, her situation is not hopeless.  The Court acknowledges that total disability without other sources of income or payment could make a debtor's ability to pay hopeless, but disability is not the only basis for determining a debtor's situation is persistent. The Court agrees the Debtor could obtain a job.  Whether the Debtor can obtain a job or not is

not the question.   Rather, the question is whether the Debtor's <u>inability to make the loan payments within the repayment period</u> is persistent.

The evidence supports the Debtor's position that she will not be able to obtain a job that generates sufficient income to make repayments on her student loans.  First, it is important to note that the Debtor was never a high-income individual.  She only made more than $30,000 three times in her life, and the highest income she ever made was $33,000.  She only made more than $25,000 four times in her life.  It is unlikely, even if this Debtor were able to resume all activities and obtain the same job, that she would obtain an income of much more than the amount she previously made.  Moreover, the Court concludes it is highly unlikely the Debtor will be able to obtain a job commensurate with her prior jobs.  While the Court believes she can obtain <u>a</u> job, it is likely this job will be part-time, sedentary, and difficult to find given her various limitations and the fact she has been out of the job market for six years.  It is also important to note her worker's compensation income will expire within the year, so any income from a job is likely to replace the worker's compensation income, not supplement it.  Moreover, the Court notes the Debtor's current living expenses are $21,600 a year.  These living expenses are minimal and do not include health insurance and now include credit card debt.  For the Debtor to be able to make a repayment on her student loans, she would need to obtain a job with a high enough income that she can consistently pay her existing living expenses plus health insurance and be able to make a student loan payment.  Based on the facts presented, the Court concludes the Debtor has carried her burden of showing that her inability to make loan payments will persist for a significant portion of the loan repayment period.

## CONCLUSION

This is a debtor who has been working to repay her student loans for over 30 years.  She has repaid over $11,000; she has followed all of the rules and guidelines set out by the holder of the student loans for obtaining deferments and forbearances; she has enrolled in an income-based repayment program which requires her to pay $-0-; she has been unemployed for six years; she lives with minimal expenses and does not have health insurance.  The Court therefore concludes the Debtor has shown by a preponderance of the evidence that she cannot maintain a minimal standard of living for herself if forced to repay the loans, based on her current income and expenses, that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans, and that the Debtor has made a good faith effort to repay the loans. The Court therefore concludes that the loans held by ECMC are dischargeable.  It is hereby

ORDERED that Goal Financial LLC, Great Lakes Educational Services and Pennsylvania Higher Education Assistance Agency are DISMISSED;

ORDERED FURTHER that judgment is for the Plaintiff as to ECMC.

### ### END OF ORDER ###

11

## DISTRIBUTION LIST

Victoria Adams
PO Box 654
Smyrna, GA 30081

Educational Credit Management Corporation
c/o Thomas W. Joyce
Jones, Cork & Miller, LLP
PO Box 6437
Macon, GA 31208-6437

Great Lakes Educational Services Inc.
2401 International Lane.
Madison, WI 53704-3192

Pennsylvania Higher Education Asst. Agency
a/k/a American Educational Services
1200 North 7th Street
Harrisburg, PA 17102

Goal Financial LLC
402 West Broadway, 20th Floor
San Diego, CA 92101

Martha A. Miller
Chapter 7 Trustee
260 Peachtree Street NW, Suite 2700
Atlanta, GA 30303-1240